## ROGERS v. ROGERS.

### No. 14,870; September 13, 1892.

31 Pac. 157.

**Divorce—Increasing Allowance for Child.**—Plaintiff, by a decree of divorce in 1885, obtained the custody of the child, with a monthly allowance of $5 from defendant for its support. In 1891, plaintiff applied to the court for an increased allowance, and made affidavit that $30 per month was required, and that defendant's in-

come was $250 per month; all of which defendant denied by his affidavit. Held, that an allowance by the court of $20 per month was not excessive.

Divorce — Allowance — Scandalous Affidavit.—Where, in such case, defendant's affidavit contained impertinent and scandalous matter reflecting on the character of plaintiff, such matter was properly stricken out.

APPEAL from Superior Court, Marin County; F. M. Angelotti, Judge.

Application by Mary E. Rogers for an increased monthly allowance from S. L. Rogers, her divorced husband, for the support of their child. From an order granting the application, defendant appeals. Affirmed.

The following is the portion of the affidavit referred to in the opinion: "Affiant says that plaintiff is not a suitable or proper person to have the care, custody, or control of said child Herbert, or any other child, for the following reasons and others: That when affiant married said plaintiff, he supposed she was a single woman of good moral character, but that after a period of about one year affiant learned that plaintiff had, for nearly two years next prior thereto to said marriage, constantly been associating and running around and about San Francisco with a gay, fast man by the name of Dr. Moreno. That plaintiff even went to the cabin, house, domicile, or quasi residence of said Moreno, and there remained under the same roof, in the same house or cabin, with said Moreno, for a long time, Moreno's wife then not being there. That said Moreno at one time stayed at the rooms or residence of an unmarried Spanish woman at Sacramento, by the alias name of 'Corina,' a woman of unchaste reputation. That affiant married plaintiff in 1871, and on or about the ninth day of December, 1871, plaintiff then being enceinte, she, by the use of a steel instrument called 'catheter' (which affiant now has in his possession), used the same upon her person in such a manner as to produce a miscarriage or an abortion, whereby plaintiff was delivered of two stillborn male infants, which were thereafter buried in the garden of affiant's then residence at Sacramento, whereby affiant was put to very great expense on account thereof, to wit, several hundred dollars. That on the twenty-seventh day of May,

1872, while affiant was attending court at Woodland, plaintiff, without the knowledge or consent of affiant, went to the store of Hamburger & Co., in said Sacramento, and, by false and deceptive statements, bought and had charged to this affiant dry-goods to the amount of over $218, mostly for silk dress patterns, then took from affiant's house all the silverware, table linen, a large amount of sheets, pillowcases, towels, napkins, bedclothes, knives, forks, spoons, etc., and many other things (all of which belonged to affiant long before affiant ever saw or was married to plaintiff), and said plaintiff 'ran away,' and left for San Francisco, and there got credit on account of the said firm of said Hamburger & Co., and to their indebtedness, which shameful and disgraceful transaction cost affiant to settle said bills, get plaintiff home, and attempt to keep the said 'runaway' out of and from the public and press, more than $1,000.     That plaintiff on the —— day of ————, 1872, she then being again enceinte, by the use of said catheter, again used the same upon her person so as to produce another abortion or miscarriage, whereby she was again delivered of a stillborn male infant, which said infant was buried in said garden, beside those aforesaid, whereby affiant was again put to great costs, trouble, and expense thereby, to wit, several hundred dollars.     That on the —— day of ————, 1873, plaintiff asked affiant for $30, as she said, to buy jewelry for her mother.     Affiant refused to give it, when plaintiff immediately took a gold watch and chain of hers (a gift from affiant), and went to the pawnshop of one Stineman, on Second street, in said Sacramento, and there pawned said watch and chain and got $30 from said Stineman, which said sum affiant, to save his shame and mortification, paid to said Stineman to keep said transaction from becoming publicly known.     That by reason of plaintiff's disgraceful conduct and transactions at Sacramento and Davisville, affiant was greatly mortified, disgraced, and for a long time they were the scandal of society, whereby affiant was irreparably injured in his position in the community, at the bar, and everywhere wherein his business relations or acquaintance extended, and especially in his profession, he having, before that time, been counsel for many of the largest firms in Sacramento, to wit, D. O. Mills & Co., Baker & Hamilton, Adams McNeal, N. L. Drew & Co., besides many others,

nearly all of whom greatly disapproved and severely censured affiant for ever living with, or having anything to do with, plaintiff after her said 'runaway.' That by reason of affiant's mortification, disgrace, and chagrin, caused as aforesaid by the acts of plaintiff, it was impossible for affiant to remain longer in said Sacramento, where he had a large and profitable practice, and he thereby gave up and sacrificed his business and came to Sausalito, plaintiff in the meantime pledging herself in the future to thus conduct herself different. That at Sausalito affiant built a comfortable residence for his family, was free from debt, had other property, and some money besides. That plaintiff, disregarding her said promise and duties as a wife and mother to her child, did on or about the twenty-fifth day of June, 1882, when she then expected in a few days to be confined and mother to another child, tell affiant with her own lips that the child then soon expected to be born,—these words, 'It is a matter in which you have no interest.' The effect of these words from the lips of plaintiff to affiant was such as may better be imagined than described. That on the twenty-sixth day of July, 1882, when plaintiff was about to be confined, she took a large quantity of ether or chloroform, with the intention, as affiant has reason to believe and does believe, she took the same for the express purpose of getting rid of her child. That she remained in a stupefied condition therefrom until July 28, 1882, at about 2 o'clock A. M., when she, her nurse, and the physician, who had been present for more than thirty hours, believed the said child then to be dead, and that unusual means must speedily be taken to try to save the life of plaintiff. That affiant, at that hour of the night, rode from Sausalito to San Rafael in the most hasty method, to procure another physician for consultation and assistance. That affiant thereby, by reason of plaintiff's taking said chloroform, was put to very heavy expense and trouble to save the life of plaintiff, and fortunately the child, who is now called 'Herbert,' plaintiff's sixth child, the subject of this controversy. That on the sixteenth day of July, 1883, while affiant was attending court at Suisun, plaintiff, unknown to affiant, gathered all the silverware, table linen, most of the blankets, sheets, much of the bedding, a lot of chinaware, and other household effects too numerous to mention, and, taking affi-

ant's two children, again 'ran away,' leaving affiant's house, and the next day served papers upon affiant for a divorce, and which said papers are now on file in this court, and are a lasting disgrace and forever a stain to the name of her children. That thereby affiant was put to a large expense, to wit, hundreds and hundreds of dollars, for counsel fees, costs, alimony, for plaintiff's numerous attorneys, and trouble, causing affiant to borrow money and thereby become largely in debt. And thereafter plaintiff returned to affiant's home, but she was wholly ignored by most of the people in society and among acquaintances, whereby affiant and his children were greatly scandalized in said society. That thereafter, on the twelfth day of February, 1885, while affiant was away to court at Oakland, plaintiff, unknown to affiant, gathered all the silverware, all the bedclothes (except one blanket and one sheet) in the house, most of the crockery, linen, towels, napkins, curtains, knives, forks, spoons, etc., and, taking affiant's two children, 'ran away,' leaving all the doors, inside and outside, to affiant's house wide open, so any person could enter at liberty, and at the same time there was stolen from affiant's house the sum of $180, which belonged to parties for whom affiant had collected the same, which said sum affiant had to repay to said parties. That thereafter plaintiff commenced another suit for divorce against affiant, similar to the first, but affiant made no opposition whatsoever on the trial thereof, but allowed plaintiff, her mother and sister to swear to anything and everything they wished, true and false, to procure a decree, whereby affiant might be freed and rid of her. That by the said decree plaintiff was awarded much more than one-half of affiant's property, notwithstanding none of said property was common or community property, affiant having (as plaintiff had not a decent garment to be married in) found the money for plaintiff to buy the dress and clothes plaintiff wore when they were unfortunately married, and the gold watch and chain she wears. Affiant further says that the disgraceful conduct of plaintiff since his said marriage with her has cost him more than $8,000, and affiant now has no home of his own, or but very little property left. Wherefore affiant asks this court, in justice to the future welfare of affiant's child, who is dear to him, and whom affiant wishes yet to bring up in a moral and respectable

manner, that he may not become a hoodlum upon the streets of San Francisco, and a disgrace to society, that an order be made herein giving the care, custody, and control of said child Herbert to said affiant.

"S. J. ROGERS.

"Subscribed and sworn to before me this 20th day of August, A. D. 1891.

[Seal]                              "J. S. BELRUDE,
                                        "Notary Public."

S. L. Rogers for appellant; T. C. Crowley for respondent.

SHARPSTEIN, J.—On the fourth day of September, 1885, appellant and respondent, formerly husband and wife, were divorced by a decree of the superior court of Marin county. The decree provided, among other things, that respondent should have the custody of the son of said parties, and that appellant should pay her $5 per month for the support and maintenance of said son. On the twenty-fourth day of August, 1891, the court, on the application of respondent, made an order that appellant pay to respondent $10 per month for the months of July and August, 1891, and thereafter $20 per month for the support of said child. Respondent filed an affidavit in support of her application, and appellant filed one against it. The court made the order as above stated, and appellant appealed from it to this court. As to the sum necessary for the support of said child, the affidavits are conflicting, and the sum allowed is not so large as to suggest an abuse of discretion by the court. Therefore we cannot interfere with the order. But appellant insists that the court erred in striking out a part of his affidavit. An examination of the part stricken out satisfies us that the matter stricken out was impertinent and scandalous, and that it was properly stricken out.

Order affirmed.

We concur: De Haven, J.; McFarland, J.